**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Antwon SANDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 4, 2011.
Filed Feb. 29, 2012.

Gary S. Server, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and James F. Gibbons, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, SHOGAN, and PLATT*, JJ.

* Retired Senior Judge assigned to the Superior Court.

## OPINION BY BOWES, J.:

Antwon Sanders appeals from the judgment of sentence of twelve and one-half to twenty-five years incarceration imposed by the trial court after he was convicted of two counts of aggravated assault, and one count each of possession of an instrument of crime ("PIC") and persons not to possess firearms. After careful review, we affirm.

The pertinent facts follow. At approximately 3:00 p.m. on February 20, 2009, three high school students, Fateem Gresham, Deshaoun Williams, and Rashan Singletary, were walking together in the area of 60th and Irving Streets in Philadelphia. Appellant approached the boys and, after walking past them, turned around and pulled a firearm on the boys, firing five to ten shots. Mr. Gresham was shot in the back, suffering severe injuries. Police arrived shortly thereafter and Mr. Gresham was transported to the University of Pennsylvania Hospital. The other two individuals managed to escape unharmed.

One week after the shooting, Detective William Farrell visited Mr. Gresham in the hospital. An unidentified doctor permitted the detective to speak with Mr. Gresham, although he was being prepared for surgery. Detective Farrell presented Mr. Gresham with a photographic array. Mr. Gresham placed his finger on a photograph of Appellant. However, Mr. Gresham stated that he was too weak to sign his name on the photographic array. Accordingly, Detective Farrell asked Mr. Gresham's mother, whom he stated was present in the room, to sign the array. At trial, Mr. Gresham testified that he had no memory of this interaction and that following the shooting he was semi-conscious for one month and one-half. Mr. Gresham did spend part of his time in the hospital in a coma. He also remarked that he had no memory of the shooting itself. Mr. Gresham's mother also testified that she was not allowed to be present when the photographic array was given to her son.

Approximately two months after the initial identification, Detective Farrell conducted an interview with Mr. Gresham. Detective Farrell stated that Mr. Gresham described the attack, again identified Appellant as the person who shot him, and signed a written statement to that effect. Mr. Gresham recalled that during this interview the detective informed him what had happened.

Another detective, Detective Matthew Farley, interviewed Deshaoun Williams. Mr. Williams, at the time of the interview, was a minor and was in custody for unrelated charges. Detective Farley maintained that Mr. Williams asserted that he saw the shooting and described the shooter as an individual with a funny-shaped head wearing a green and black hoodie and black trench coat. Mr. Williams also reportedly described the attacker as being 5'4" or 5'5", skinny, and seventeen years of age. Appellant was 5'6" and 130 pounds at the time of his arrest. At trial, Mr. Williams testified that he was in a pizza shop at the time of the shooting and did not see the incident. He further provided that when he was interviewed by police, he was intoxicated and requested to speak with his mother and was informed that she could not see him.

Ultimately, after the denial of a suppression motion relating to the photographic identification, a jury found Appellant guilty of the aforementioned charges. Subsequently, the court sentenced him to an aggregate term of incarceration of twelve and one-half to twenty-five years. Appellant timely filed a post-sentence motion, which the trial court denied. This appeal ensued. Appellant now raises four issues for our consideration.

I. Whether the Court erred when it denied the Appellant's suppression motion where the police used an unduly suggestive and inherently unreliable procedure.

II. Whether the Appellant's convictions were against the weight of the evidence where identification witnesses recanted and where the evidence adduced at trial established that the identification of the Appellant was not positive or consistent with prior descriptions of the perpetrator.

III. Whether the Appellant's convictions were based upon sufficient evidence that the Appellant was the actual perpetrator of the crimes.

IV. Whether the Court erred when it denied the Appellant's request for a Kloiber instruction.

Appellant's brief at 6.

Appellant's third issue challenges the sufficiency of the evidence. Since such a claim, if successful, prohibits re-trial, we address this issue first. *See Commonwealth v. Stokes,* 2011 PA Super 261, 38 A.3d 846.

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of inno-

cence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley,* 14 A.3d 887, 889–890 (Pa.Super.2011).

Appellant's argument is less than developed and the only citation provided is to our standard of review. The limited argument that Appellant does make is that the Commonwealth's case was contradictory and of "questionable veracity." Appellant's brief at 16. In presenting this position, Appellant appears to argue that there was insufficient evidence to support his identification. *See* Appellant's brief at 17 ("there was insufficient evidence for the jury to conclude beyond a reasonable doubt that the Appellant was accurately identified and therefore that each and every element of the crimes against the Appellant had been proven.").

 The Commonwealth responds that Appellant has ignored the appropriate standard of review for sufficiency claims. We agree. The evidence must be viewed in a light most favorable to the verdict winner and the credibility of the witnesses is not to be re-weighed on appeal. Since the prior identifications were admitted as substantive evidence, the jury was free to conclude that Appellant was the shooter.[1]

---

**1.** Even evidence which is impermissibly introduced is considered when evaluating a suffi-

ciency claim. *Commonwealth v. Reed,* 605 Pa. 431, 990 A.2d 1158, 1161 (2010) ("the

Thus, Appellant's sufficiency argument fails.

▮ Appellant also challenges the court's pre-trial suppression ruling, which permitted Mr. Gresham's photographic identification to be introduced into evidence. Our standard and scope of review in suppression matters is established.

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1287 (Pa.Super.2010) (*en banc*). When analyzing the admission of identification evidence, a suppression court must determine "whether the challenged identification has sufficient indicia of reliability[.]" *Commonwealth v. Bruce*, 717 A.2d 1033, 1037 (Pa.Super.1998). This question is examined by focusing on the totality of the circumstances surrounding the identification. *Id.* at 1036. In deciding the reliability of an identification, a suppression court should evaluate the opportunity of the witness to see the criminal at the time the crime occurred, the witness's degree of attention, the accuracy of any description given, the level of certainty when identification takes place, and the period between the crime and the identification. *Id.* at 1037.

▮ Appellant argues that Mr. Gresham was not sufficiently cogent and lucid to make an accurate identification when he was shown the photographic array. He submits that the detective did not question a doctor about any drugs that had been administered to Mr. Gresham, who at the time of the identification was being prepared for surgery. Appellant asserts that the reliability of the identification is suspect because Mr. Gresham was unable to sign the photographic array and was under the influence of drugs. Furthermore, according to Appellant, "there was an absence of corroborating circumstances indicating that Gresham had seen with any degree of certainty the person who shot him[.]" Appellant's brief at 13. The Commonwealth counters that because Appellant concedes that there was no deliberate police misconduct, suppression of the pre-trial identification was unwarranted.

▮▮ We find the rationale expressed in *Commonwealth v. O'Bryant*, 320 Pa.Super. 231, 467 A.2d 14 (1983), persuasive. The *O'Bryant* Court reasoned that the purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action.[2] Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted.[3] In the case *sub judice*, Appel-

---

entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct").

2. Of course, we recognize that suppression orders in the search and seizure context, under Pennsylvania law, are also concerned with the privacy interests of those in this Commonwealth rather than just the propriety of police action. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 897–900 (1991). No such privacy implications are present in this scenario.

3. We address the admissibility of the photographic array identification evidence relevant to its hearsay implications *infra*.

lant has failed to demonstrate that police conduct resulted in an impermissibly *suggestive* identification. Appellant does not assert that the photographic array was improper or that the officer in some manner suggested to Mr. Gresham that Appellant was his attacker. Here, Appellant's position relates to the condition of Mr. Gresham at the time he made the identification. We believe that Appellant's arguments about the circumstances in which Mr. Gresham made his identification go to the weight of the evidence and not its admissibility. *See Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 602 (2007). Neither the identification procedure in this case nor the circumstances under which the identification was made suggested to Mr. Gresham that Appellant was the individual who shot him. *See Commonwealth v. Doa*, 381 Pa.Super. 181, 553 A.2d 416, 425 (1989). Moreover, even assuming that the photographic array identification was sufficiently suggestive to be unreliable, Mr. Gresham subsequently gave police a signed statement identifying Appellant. Thus, any possible error would be harmless since cumulative proper evidence of a prior identification was admissible.

 Appellant next presents a weight of the evidence argument.

> [W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003) (citations omitted). Hence, a trial court's denial of a post-sentence motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 597 Pa. 28, 949 A.2d 873, 880 (2008). Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve. *Commonwealth v. Tharp*, 574 Pa. 202, 830 A.2d 519, 528 (2003).

 Appellant contends that because both Mr. Gresham and Mr. Williams recanted or testified they did not see the shooter, and since Mr. Gresham stated that he was only semi-conscious when the detective presented him with the photographic array, the verdict was against the weight of the evidence. In addition, Appellant posits that the Commonwealth's theory that the witnesses recanted because they were intimidated is unsupported by any evidence of record. Indeed, Appellant points out that the witnesses testified that they were not frightened. The Commonwealth replies that the trial testimony of Mr. Gresham and Mr. Williams was implausible and "demonstrated that they had developed amnesia only because they were terrified." Commonwealth's brief at 8.

Although we agree with Appellant that there was no direct evidence that the witnesses changed their stories because they were afraid, the jury was still free to make credibility determinations. Hence, the jury was allowed to reject the trial testimony of Mr. Gresham and Mr. Williams as lacking credibility. This Court is not permitted to reweigh such credibility determinations on appeal. A jury decision to credit certain evidence and reject other testimony is appropriate; therefore, the trial court did not abuse its discretion in concluding that its sense of justice was not shocked by the verdict.

The final position Appellant levels on appeal is that the trial court erred in declining to give the jury a *Kloiber* instruction.[4] A *Kloiber* instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 303 (2010).[5]

Appellant contends that a recantation is the greatest equivocation possible and that neither Mr. Gresham nor any other witness gave a positive unqualified identification. The Commonwealth counters that a *Kloiber* instruction is not warranted where there is no in-trial identification. According to the Commonwealth, "the refusal to identify a defendant at trial does not implicate any of the *Kloiber* factors." Commonwealth's brief at 12. The Commonwealth highlights that the jury instruction itself presupposes an in-court identification and that a refusal to identify a defendant in court is not a failure to identify on a prior occasion. Lastly, the Commonwealth posits that the issue at bar "was the credibility of the eyewitnesses' recantations at trial, not their ability to see the shooter, and their credibility was fully explored on both direct and cross examination." Commonwealth's brief at 13.

We evaluate whether a *Kloiber* instruction is necessary under an abuse of

---

4. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954).

5. The instruction reads:

> 4.07B (Crim) Identification Testimony—Accuracy in Doubt
> 1. In [his] [her] testimony, *[name of witness]* has identified the defendant as the person who committed the crime. There is a question of whether this identification is accurate.
> 2. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution. Identification testimony must be received with caution [if the witness because of bad position, poor lighting, or other reasons did not have a good opportunity to observe the criminal] [if the witness in [his] [her] testimony is not positive as to identity] [if the witness's positive testimony as to identity is weakened [by qualifications, hedging, or inconsistencies in the rest of [his][her] testimony] [by [his] [her] not identifying the defendant, or identifying someone else, as the criminal [at a lineup] [when shown photographs] *[give specifics]* before the trial] ] [if, before the trial, the defendant's request for a [lineup] *[specify request]* to test the ability of the witness to make an identification was denied and the
>
> witness subsequently made a less reliable identification] [if, *[give specifics]* ].
> *[First Alternative: Court rules as a matter of law that caution is required: ]*
> 3. In this case [there was evidence that *[name of witness]* could not see the criminal clearly] *[give specifics].* Therefore, you must consider with caution [his] [her] testimony identifying the defendant as the person who committed the crime.
> *[Second Alternative: When there is a jury issue as to whether caution is required: ]*
> 4. If you believe that [this factor is] [one or more of these factors are] present, then you must consider with caution *[name of witness]*'s testimony identifying the defendant as the person who committed the crime. If, however, you do not believe that [this factor] [at least one of these factors] is present, then you need not receive the testimony with caution; you may treat it like any other testimony.
> 5. You should consider all evidence relevant to the question of who committed the crime, including the testimony of *[name of victim or witness]*, [any evidence of facts and circumstances from which identity, or non-identity, of the criminal may be inferred] *[give other circumstances].* You cannot find the defendant guilty unless you are satisfied beyond reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the defendant who committed it.

discretion standard. *Commonwealth v. Jones,* 954 A.2d 1194, 1198 (Pa.Super.2008). The question of whether *Kloiber* is implicated where witnesses make out-of-court identifications but subsequently refuse to make an in-court identification has not been explored. Of course, at the time our Supreme Court decided *Kloiber,* prior inconsistent statements, such as the out-of-court identifications herein, were not admissible as substantive evidence. Thus, when the Supreme Court handed down the ruling in *Kloiber,* the current issue could not have been contemplated. Simply put, at the time of the *Kloiber* case, if a witness did not make an identification at trial, any prior identifications could only be used as impeachment evidence and not evidence that the witness actually saw the defendant commit the crime at issue. *See Commonwealth v. Floyd,* 508 Pa. 393, 498 A.2d 816 (1985) (plurality). It was only after our Supreme Court's later decision in *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986), that prior inconsistent statements became admissible as substantive evidence. *See also Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992); Pa.R.E. 803.1.[6]

 We do note that in this case, the prior photographic array identification by Mr. Gresham could not have properly been used as substantive evidence of identification because he did not testify to making the prior identification[7] nor was this inconsistent statement admissible for the truth of the matter asserted since it was his mother and not he who signed the photographic array.[8] *See* Pa.R.E. 803.1(1); Pa.R.E. 803.1(2). The trial court opined in its Pa.R.A.P. 1925(a) opinion that both witnesses' prior identifications were admissible as substantive evidence. This reasoning is too broad. Mr. Gresham's photographic identification must fall within either Pa.R.E. 803.1(1) or Pa.R.E. 803.1(2) to be admissible as substantive evidence.

 The trial court in its opinion relied exclusively on the statement in *Brady, supra,* that out-of-court declarations rendered under highly reliable circumstances are admissible. It failed to account for later decisions such as *Lively, supra,* which limited the holding of *Brady.* The court did not discuss whether or how Mr. Gresham's mother's signature on the photographic array constituted a writing

---

**6. Rule 803.1. Hearsay exceptions; testimony of declarant necessary**

The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:

**(1) Inconsistent statement of witness.** A statement by a declarant that is inconsistent with the declarant's testimony, and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.

**(2) Statement of identification.** A statement by a witness of identification of a person or thing, made after perceiving the person or thing, provided that the witness testifies to the making of the prior identification.

Pa.R.E. Rule 803.1(1)-(2).

**7.** We are cognizant that any inconsistency between the prior identification and the trial testimony would not render the prior identification inadmissible hearsay so long as the identifying witness actually admitted to making the identification. *See Commonwealth v. Doa,* 381 Pa.Super. 181, 553 A.2d 416 (1989) (discussing evidentiary law pre-codification of the Pennsylvania Rules of Evidence and finding that a witness need not be able to identify the defendant at trial for prior identification to be substantively admitted via the testimony of a police officer).

**8.** The statement would be admissible as impeachment evidence. Pa.R.E. 613.

adopted by Mr. Gresham. Nor did it recognize that statements of identification are admissible as substantive evidence only after the witness testifies to making the identification. Such testimony is absent in the present case. Nonetheless, Mr. Gresham did later sign a written statement indicating that Appellant was his assailant. This statement was properly admitted as substantive evidence because he signed and adopted the writing setting forth the identification. *Commonwealth v. Carmody*, 799 A.2d 143, 148–149 (Pa.Super.2002) (claim that witness does not remember providing a written statement and was intoxicated when the statement was adopted does not render prior inconsistent statement inadmissible).[9] However, Mr. Gresham's trial testimony, in which he did not identify Appellant as his attacker and stated that he could not recall making a prior identification, does present an example of equivocation. Phrased another way, there is a question as to whether Mr. Gresham's prior identification evidence is accurate because he stated at trial that he could not recall making the identification, based on his medical condition, and he did not identify Appellant at trial.

 It is settled that *in-court identification* evidence must be received with caution if the witness in his testimony or at prior times was not positive as to the identity of the defendant. Furthermore, any positive evidence of identity is weakened by qualifications, hedging, or inconsistencies in the witness's testimony and must be received with caution. In addition, there was evidence introduced at trial that Mr. Williams could not have seen Appellant because he testified that he was not at the scene. Of course, the court

could have instructed the jury that if it believed that Mr. Williams was not present at the scene, that it should consider with caution his prior identification, but if it did not believe his trial testimony in this regard, it need not receive the prior identification evidence with caution.

Although we disagree with the Commonwealth's broad assertion that identification evidence should not be received "with caution" unless an in-court identification is at issue, we decline to hold that the trial court abused its discretion herein. Instantly, the trial court did issue an instruction pertaining to the identification evidence. The court stated,

> Deshaoun Williams and Fateem Gresham identified the Defendant who committed the crime in their statements to police. At trial, neither one identified Mr. Sanders. In evaluating their testimony, in addition to all of the other instructions I have already provided to you, I will provide to you some factors for judging the testimony witnesses that that you may follow, and you remember the other factors I gave you in terms of judging credibility and things of that nature.

> So in terms of identification, did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for him or her or them to make their observations? Were they close enough to the individual to note the person's facial or other physical characteristics as well as any clothing that he was wearing, whether the witnesses made a prior identification of the Defendant as the perpetrator of

---

9. We also note that the trial court limited the applicability of *Kloiber* to "situations where the witness is not in a position to clearly observe the assailant." Trial Court Opinion, 2/24/11, at 14 (internal quotation omitted).

As discussed in the text *supra, Kloiber* applies to three disjunctive situations, not merely the one articulated by the trial court. *See Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 303 (2010).

these crimes at any other proceeding. Consider whether the identification was positive or was qualified by any hedging or inconsistencies. Consider, during the course of this case, did the witness identify anyone else as the perpetrator?

In considering whether or not to accept the testimony of Fateem Gresham and [Deshaoun] Williams, you should consider all of the circumstances under which the identifications were made.

N.T., 2/16/10, at 26–28.

■■■ In this instruction, the court expressly noted that the witnesses did not identify Appellant at trial and instructed the jury to consider whether the identification was qualified by hedging or inconsistencies. The court further remarked that the jury was to consider all of the circumstances under which the identifications occurred. Therefore, the jury was apprised of the issue concerning the witnesses' prior identifications and failure to identify Appellant at trial. Accordingly, we hold that the trial court did not commit reversible error in failing to instruct the jury that it must accept the prior identifications with caution where there was no in-court identification. Unlike the typical *Kloiber* situation, where there is a damaging in-court identification of the accused, the same type of concerns are not present where a witness declines to identify the defendant in court.

Judgment of sentence affirmed.

Judge PLATT Concurs in the Result.