J-S51004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN EUGENE SMITH, | |
| Appellant | No. 391 MDA 2014 |

Appeal from the Judgment of Sentence May 29, 2013
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001353-2012, CP-54-CR-0001354-2012

BEFORE:  BOWES, OTT, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 13, 2014**

Kevin Eugene Smith appeals from the judgment of sentence of three and one-half to seven years incarceration imposed by the trial court after a jury found him guilty of two counts each of robbery, theft by unlawful taking, and receiving stolen property.  Counsel has filed a petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We grant counsel's petition to withdraw and affirm.

The Commonwealth arrested and charged Appellant with the robbery of two separate banks on June 6, 2012 and June 29, 2012.  Video surveillance captured both incidents.  Bank employees from both institutions appeared at the State Police Barracks on August 23, 2012 to view a

photographic array. The eyewitnesses were separated from one another when they were shown the array. In addition, after viewing the array, the witnesses were not permitted to speak with other eyewitness who had not yet seen the lineup.

All of the eyewitnesses except one positively identified Appellant as the culprit. Appellant filed a motion to suppress based on an unduly suggestive photographic procedure and sought to preclude the witnesses involved from identifying him at trial. Specifically, he alleged that his picture had a darker background than the other photographs and was disproportionality larger than the remaining pictures. He also averred that police informed the witnesses that the person involved in the robberies was included in the array.

The court conducted a suppression hearing. Therein, State Police Trooper John Sleboda, Jr. testified that he created an eight photograph array based on pictures selected at random via a program called JNET. The pictures depicted African American males with facial hair between six foot and six foot two and a minimum weight of 210 pounds. Trooper Sleboda showed the array to one witness, but thereafter another officer conducted the array interviews. The person whom Trooper Sleboda interviewed was Rosann Madenford, a teller at one of the banks. She identified Appellant as the assailant within seconds of viewing the array. According to Ms. Madenford, the robbery took approximately two to three minutes and

Appellant stood in front of her for twenty seconds. She described the assailant as wearing black jeans, a New York baseball hat, sunglasses, and a black sweatshirt. She testified that she did not discuss her identification with any other witness.

Following Ms. Madenford's identification, Trooper Mark Baron, who did not know which photograph depicted the suspect, conducted the interviews. Donna Bernasz, who worked at the same bank as Ms. Madenford, identified Appellant and provided that she observed his face for approximately ten to fifteen seconds after he demanded a teller put money into a bag. Ms. Bernasz selected Appellant's photograph within thirty seconds of viewing the lineup, but did state that the culprit had more facial hair on the date of the robbery. She described the robber as a tall black man with a scruffy beard, wearing black jeans, a black sweatshirts, and a baseball hat with a New York emblem on it.

A third eyewitness, Heather Klinger, worked at the second bank. She selected Appellant from the array within two minutes, definitively identifying Appellant. According to her, she saw Appellant for about four minutes during the robbery and that he wore gloves, sunglasses, a hat, and a long-sleeve shirt. Ms. Klinger's co-worker, Carol McSurdy, similarly described the robber as wearing a black baseball hat, sunglasses, a long-sleeve shirt and gloves. She selected Appellant from the lineup and had no doubt regarding the identification.

The manager at the second bank, Candace Schade also identified Appellant. Her description of the robber matched that of her co-workers. She detailed that the robber wore a New York baseball hat, sunglasses, gloves, a long-sleeve green shirt, and jeans that were sagging so that she could see he was wearing navy blue underwear.

The court found that the array was not suggestive, concluding that the photographs were the same size and, although there was slight coloration differences in the backgrounds of all the pictures, Appellant's photograph did not stand out. Accordingly, the court denied Appellant's motion. Appellant proceeded to a jury trial. The jury found Appellant guilty of the aforementioned charges.[1] The court sentenced Appellant on May 29, 2013.

Appellant initially failed to timely file a direct appeal. However, he timely filed a post-conviction relief petition on November 18, 2013. Therein, he sought reinstatement of his direct appeal rights. The court conducted a hearing on January 27, 2014, and the court granted Appellant's motion. Appellant filed the instant appeal on February 28, 2014, two days after the ordinary thirty day period for filing an appeal. *See* Pa.Crim.P. 908(E); Comment to Pa.R.Crim.P. 908 ("When the disposition reinstates a defendant's direct appeal rights *nunc pro tunc*, the judge, pursuant to paragraph (E), also must advise the defendant that a new notice of appeal

_____

[1] The court dismissed, at the close of the Commonwealth's case-in-chief, a charge of dealing in proceeds of unlawful activity.

- 4 -

must be filed within 30 days of the order reinstating the direct appeal rights"). Nevertheless, the court failed to comply with Rule 908 by indicating in its order granting reinstatement of Appellant's direct appeal rights the appropriate period for filing his appeal. This Court issued an order on March 27, 2014, directing Appellant to address the timeliness of his notice of appeal.

Appellant's counsel now files a petition to withdraw and an accompanying **Anders** brief, contending that there are no non-frivolous issues to be reviewed. In the **Anders** brief, counsel sets forth as the issue arguably supporting an appeal as "[d]id the [c]ourt err in failing to suppress the photo lineup?" **Anders** brief at 3.

As we do not address the merits of issues raised on appeal without first reviewing a request to withdraw, we review counsel's petition to withdraw at the outset. **Commonwealth v. Cartrette**, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*). The procedural requirements for withdrawal require counsel to: 1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has concluded that the appeal is frivolous; 2) provide a copy of the **Anders** brief to the defendant; and 3) inform the defendant that he has the right to retain private counsel or raise, *pro se*, additional arguments that the defendant deems worthy of the court's attention. **Id**.

Counsel's petition to withdraw provides that he made a conscientious review of the record and concluded that there are no non-frivolous issues. Counsel notified Appellant that he was withdrawing and furnished Appellant with copies of both the petition to withdraw and *Anders* brief. Additionally, counsel informed Appellant of his right to retain new counsel or proceed *pro se* to raise any issues he believes this Court should consider. Thus, counsel has satisfied the procedural requirements of *Anders*.

Counsel having complied with the procedural dictates of *Anders*, we next consider whether counsel's *Anders* brief meets the substantive requirements of *Santiago*. Under *Santiago*, an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361.

Counsel provided a history of the facts and procedural background of this case. He also discusses his reasons for determining that Appellant's appeal is frivolous, and provides case law indicating why he has concluded that the appeal is wholly frivolous. Hence, counsel has complied with the requirements of *Anders/Santiago*.

Preliminarily, we must discuss whether Appellant timely filed this appeal where his notice of appeal was filed more than thirty days after the

- 6 -

trial court reinstated his direct appeal rights. Prior to the July 27, 2012 amendment to Rule 908, which became effective September 1, 2012, there was no specific requirement that a PCRA court delineate the period for filing a reinstated direct appeal for cases taken under advisement. Appellant's case, however, was not taken under advisement. Nevertheless, the court did not inform Appellant in its order of the time in which to file his appeal. In *Commonwealth v. Meehan*, 628 A.2d 1151 (Pa.Super. 1993), this Court treated the failure to comply with Rule 908's predecessor, Rule 1508, where the court denied relief, as grounds for disregarding an untimely notice of appeal based on a breakdown in the judicial system. We will apply *Meehan*, and consider Appellant's appeal.

We now proceed to examine the issue forwarded by counsel in his *Anders* brief. In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the suppression record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012).[2] This Court is bound by the factual findings of the

_____

[2] In *In re L.J.*, 79 A.3d 1073 (Pa. 2013), our Supreme Court applied prospectively a new rule regarding the scope of review in suppression matters. Specifically, it clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record, but not evidence elicited at trial. Here, the suppression hearing commenced prior to *L.J.*

suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

Suppression of a pre-trial identification is warranted to prevent improper police conduct. *Commonwealth v. Lark*, 91 A.3d 165, 168-169 (Pa.Super. 2014). Suggestiveness is but one factor in determining the admissibility of a pre-trial identification and the court must consider the totality of the circumstances in rendering a suppression ruling. *Id*. at 168. "Identification evidence will not be suppressed 'unless the facts demonstrate that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa.Super. 2011). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." *Id*.

Here, we agree that Appellant's photograph and the lineup procedure was not unduly suggestive. Appellant's picture itself does not stand out from the remaining photographs. The suppression court found the eyewitnesses testimony credible regarding the nature of the lineup showing and that police did not suggest to them who they should identify. Appellant's issue is frivolous. Furthermore, after our own independent

review of the record and governing law, we find that there are no preserved non-frivolous issues that exist.[3]

Judgment of sentence affirmed. Petition of Mark A. Barket, Esq. to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2014

_____

[3] Appellant filed a motion to sever these two cases, which was denied. He did not raise this issue in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.