J-S04019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AIRII AUNN TEIR ONTERRICE COAD | |
| Appellant | No. 959 MDA 2020 |

Appeal from the Judgment of Sentence entered February 19, 2020
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0001964-2018

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED: APRIL 7, 2021**

Appellant, Airii Aunn Teir Onterrice Coad, appeals from the judgment of sentence the Court of Common Pleas of Lebanon County imposed on February 19, 2020.  Appellant changes the sufficiency and the weight of the evidence. Upon review, we affirm.

The trial court summarized the factual and procedural background as follows.

> On September 4, 2018, [Appellant] was charged with one (1) count of rape, two (2) counts of sexual assault, one (1) count of involuntary deviate sexual intercourse, two (2) counts of criminal use of communication facility, two (2) counts of indecent assault, and (1) count of harassment.  These charges stem from various non-consensual sexual acts with [Victim] that included both vaginal and oral intercourse between September 2017 and November 2017.
>
> On December 17, 2019, a jury trial was held in this matter. [Victim] testified at trial and stated that after meeting [Appellant]

through mutual friends, they engaged in consensual sexual intercourse. However, after a period of time, [Victim] was concerned [Appellant] was not invested in their relationship and she decided to stop texting [Appellant]. [Victim] stopped speaking to [Appellant] in April or May of 2017 and did not hear from him for approximately three months. After these few months, [Victim] received a text from [Appellant]. When [Victim] asked why it had been so long since she had heard from him, he explained that he had been hospitalized and nearly died. During the text message conversation, [Victim] explained that she had been thinking about [Appellant] and their relationship and she didn't want it to continue.

[Appellant] didn't initially respond but eventually asked to meet with [Victim] and discuss their text message conversation. On September 10, 2017, [Victim] met with [Appellant] for a walk on the rail trail in Lebanon. [Victim] testified that during their conversation, [Appellant] told her he had taken nude photos of her without her knowledge. He told [Victim] that there was nothing stopping him from posting them on Facebook, which would result in her losing her job, friends, and family. [Victim] asked to see the photos but [Appellant] would not show her.

During her testimony, [Victim] described [Appellant] as very upset and it was clear to her that [Appellant] was trying to blackmail her. [Appellant] told [Victim] that he would not post the photos of her if she agreed to have sexual intercourse with him two more times. At this point, [Victim] said she started to panic but agreed to have oral and vaginal intercourse with [Appellant] in return for [Appellant] deleting the photos. [Victim] explained at trial why she agreed to the terms:

> I did not want to do it, but I felt I had no choice because I felt if he left, he would put everything online. And even if I went to the cops, it would already be too late because everything would be online. So I agreed to it because I had thought since I had done it this long willingly because I wanted to and it was only two more times, I figured I can deal with it even though I don't want to.

[N.T. Trial, 12/17/19, at 18].

After agreeing to have sexual intercourse with [Appellant] two more times in return for him deleting the photos, [Victim] and [Appellant] engaged in both oral and vaginal intercourse. While walking back to Lebanon, [Victim] expressed to [Appellant] that what he was doing was wrong, but she testified he didn't seem to care. Before he left, [Appellant] told [Victim] he would text her when it was time to meet up again.

On September 18, 2017, [Victim] met with [Appellant] a second time and engaged in sexual intercourse. Afterwards, [Victim] told [Appellant] she wanted proof that he would follow through with his end of the deal and delete the images. As first, [Appellant] wouldn't show her his phone but he did eventually show her a screen that said the pictures were deleted.

Sometimes in October 2017, [Appellant] contacted [Victim] via text message and told her he wanted to talk to her about something important. [Victim] initially ignored the message from [Appellant] until he used the phrase "or else." After reading his message, she agreed to meet with him.

During their meeting, [Appellant] explained to her that he had been cleaning out his computer and found a folder with more nude photos of [Victim]. [Appellant] indicated that since there were more photos, he wanted to make another deal. [Victim] explained that he they already had a deal and he needed to delete the new photos. [Appellant] refused and told [Victim] that the old deal only applied to the photos on his phone, not the new photos on his computer. He then told her she would need to have sexual intercourse with him three times if she wanted him to delete everything. If she refused, he would post all the photos online. Based on [Appellant]'s threats, [Victim] agreed to have sexual intercourse with [Appellant] three more times in return for him deleting the photos on his computer. [Appellant] and [Victim] then engaged in oral and vaginal intercourse that day and two more times later that fall.

After this second agreement was made, [Appellant] became more aggressive in his text messages to [Victim]. In addition to sexual contact, [Appellant] demanded that [Victim] send him videos and photographs or he would post the photos online. [Victim] was able to secure copies of some of the text messages sent by [Appellant] including the following:

1. "So now since you want to argue, you get to do a live video strip tease for me."
2. "If you don't hold up your end, everything you ever get sent posted online [sic]. Right now I have the power, so if I want you as my personal fuck toy then that's what happens. Understand?"
3. "Let me put it – let me put it this way we're done when I say we're done. You don't say goodnight and just leave."
4. "Otherwise, you'll get an extreme punishment so I'm waiting my little toy."

Victim testified that if she did not immediately respond to his message, [Appellant] would become upset and either threaten to post the photos or demand that an additional day of sexual intercourse be added onto their deal. Because [Appellant] kept increasing the number of times she was required to have sexual intercourse with [Appellant], [Victim] became concerned [Appellant]'s behavior was never going to stop. At this point, [Victim] informed her therapist and the police became involved.

After hearing the testimony and evidence presented, the Jury found [Appellant] guilty on all counts. On February 19, 2020, [Appellant] appeared before [the trial court] for sentencing where he was sentenced to an aggregate sentence of ten (10) to twenty (20) years in a state correctional institution.

Trial Court Opinion, 6/19/20, at 2-5 (unnecessary capitalization removed)

(citations to record omitted).

On March 2, 2020, Appellant filed a timely post-sentence motion,[1] which

the trial court denied on June 19, 2020. This timely appeal followed.

As noted above, Appellant was convicted of several crimes (*i.e.*, rape,

sexual assault, involuntary deviate sexual assault, criminal use of

_____

[1] The tenth day after sentencing, February 29, 2020, was a Saturday. ***See*** 1 Pa. C.S.A. § 1908 (excluding weekend days and legal holidays from the computation of the time period for a filing when the last day of the time period falls on a weekend or legal holiday).

communication facility, indecent assault, and harassment). Appellant challenges the sufficiency of the evidence by alleging vaguely that the Commonwealth failed to prove that he engaged in "non-consensual sexual contact with the alleged victim." Appellant's Brief at 4 (Statement of Questions Involved).[2]

The argument section of Appellant's brief, in a similarly undeveloped fashion, provides no additional context, authority, or support in the record. Indeed, Appellant's argument on this claim consists of the following: "[Appellant] asserts that the Commonwealth failed to present sufficient evidence at trial that he either engaged in non-consensual sexual acts with the alleged victim or forced the alleged victim to engage in sexual acts with him. Specifically, [Appellant] asserts that he and [v]ictim engaged in consensual intercourse." *Id.* at 9-10 (Argument for Appellant).

Appellant has waived this claim by failing to articulate which elements of the crimes in question the Commonwealth failed to establish. "[W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's [Rule] 1925 statement must 'specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal."

---

[2] Appellant uses identical language in his concise statement of matters complained of on appeal, *i.e.*, "the trial court erred by denying [Appellant]'s motion for judgment of acquittal because the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] engaged in non-consensual contact with alleged victim." Concise Statement of Matters Complained of on Appeal, 8/11/20, at 1 (unnecessary capitalization omitted).

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). "Such specificity is of particular importance in cases where . . . the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* Additionally, the trial court's decision to address the sufficiency of the evidence does not affect our finding of waiver. *Commonwealth v. Cannon*, 954 A.2d 1222, 1228 (Pa. Super. 2008) (when trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review; vague Rule 1925(b) statement may result in waiver, even if trial court correctly guesses issues appellant seeks to raise on appeal) (internal quotation marks and citations omitted).

To the extent the above claim is not waived, it is nonetheless meritless.

Regarding sufficiency of the evidence challenges, our standard of review is *de novo*, and our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 420-21 (Pa. 2014).

Appellant argues that the evidence does not support his convictions because Victim consented to his conduct. The Crimes Code defines consent as follows:

> (a) General rule.--The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives an element of the offense or precludes the

infliction of the harm or evil sought to be prevented by the law defining the offense.

. . . .

(c) Ineffective consent.--Unless otherwise provided by this title or by the law defining the offense, assent does not constitute consent if:

. . . .
    (4) it is induced by force, duress or deception of a kind sought to be prevented by the law defining the offense.

18 Pa.C.S.A. § 311.

Here, save for a one-sentence, conclusory statement, Appellant provides no rebuttal for the conclusion that Victim's assent was ineffective because it was induced through force, duress, or deception. In essence, Appellant leaves it to us to articulate an argument on his behalf and expects us to review the evidence in the light most favorable to him. That it is not our role. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (this Court "will not act as counsel and will not develop arguments on behalf of an appellant").

Viewing the evidence of record, and all reasonable inferences arising therefrom, in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that

sufficient evidence was presented to prove beyond a reasonable doubt that [Appellant] forced [Victim] to engage in non-consensual sexual acts. [Appellant] told [Victim] he had nude photos of her that he would post online unless she agreed to have sexual intercourse with him. [Appellant] told [Victim] that she would lose her job, her friends, and her family if these photos were posted. As a result of these threats, the testimony shows that [Victim] agreed to engage in both oral and vaginal intercourse with [Appellant] in exchange for him deleting the nude photos. [Appellant] then continued to blackmail [Victim] with threats of

additional nude photos to force [Victim] to engage in additional sexual intercourse with him.

While [Victim] initially consented to the sexual contact early on in the relationship, this consent was withdrawn. [Victim] told [Appellant] she did not want to continue with their relationship, what he was doing was wrong, and that she felt like she had no other choice but to agree to have sexual intercourse with [Appellant]. Ultimately, the threat of publication of the nude photos is a clear indication the consent was coerced. As such, sufficient evidence was presented at trial to find [Appellant] guilty beyond a reasonable doubt.

Trial Court Opinion, 6/19/20, at 7 (footnote omitted).

The record shows that the Victim agreed to sexual contact with Appellant early on in their relationship. Later on, however, Victim ended the relationship and withdrew her consent to sexual contact with Appellant at that point. Unhappy with Victim's decision, Appellant decided to coerce Victim into "agreeing" to additional sexual contact under the threat of publication of Victim's nude photos, telling the Victim that if the photos were to be posted she would lose her job, her friends, and her family. Faced with Appellant's threat, Victim felt she had no choice other than to assent to additional sexual contact. This assent clearly was ineffective under Section 311 because it was induced under duress. Accordingly, Appellant's challenge to the sufficiency of the evidence is meritless.

Next, Appellant challenges the weight of the evidence by arguing that "the jury gave too much weight to the Victim's testimony. [Appellant] asserts that she was not credible[.]" Appellant's Brief at 12.

In reviewing a challenge to the weight of the evidence, our Supreme Court has instructed as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted). This Court does not step into the shoes of the trial court to revisit whether the verdict was against the evidence. Rather, our task is to "analyze whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will. *Id.* at 1056. A new trial should only be awarded "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Id.* at 1055.

In denying Appellant's motion for a new trial, the trial court noted:

> Here, the verdict was not against the weight of the evidence. As stated above, [Appellant] coerced [Victim] to engage in sexual intercourse with him by threatening to publish nude photos of [Victim]. [Victim] testified extensively on her interactions with [Appellant] and text messages exchanged between them. [Victim] stated she was blackmailed and felt like she had no other choice but to agree to have sexual intercourse with [Appellant].
>
> As to the credibility of [Victim] as a witness at trial, this duty is in the sole discretion of the Jury. The Jury was able to listen to [Victim] testify both during direct and cross examination, observe

- 9 -

her demeanor, and the Jury also had the opportunity to see the text messages exchanged between [Appellant] and [Victim]. The Jury was free to consider all evidence presented when deliberating on the verdict. Based on the evidence presented at trial, the Jury found [Appellant] guilty. When reviewing the testimony and the evidence in this case, the Jury's verdict "does not shock one's sense of justice" and the [trial court] finds the Jury's verdict of guilty is not against the weight of the evidence.

Trial Court Opinion, 6/19/20, at 8-9.

In light of the foregoing, and considering the applicable standards, we conclude that Appellant failed to show that the trial court abused its discretion in denying Appellant's motion for a new trial.

By claiming that the jury placed too much weight on the testimony of the Victim, Appellant is in essence asking us to reweigh the testimony of the Victim and substitute our judgment for that of the jury. As an appellate court, we may not reweigh the evidence and substitute our judgment for that of the fact-finder. *See, e.g., Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004) ("This Court cannot substitute its judgment for that of the jury on issues of credibility"); *Commonwealth v. Gibson*, 720 A.2d 473, 480 (Pa. 1998) ("Credibility determinations are strictly within the province of the finder of fact; therefore, an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact"); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) ("This Court is not permitted

to reweigh such credibility determinations on appeal. A jury decision to credit certain evidence and reject other testimony is appropriate").

It is clear the jury chose to credit the Commonwealth's evidence, as it was allowed to do, and Appellant failed to point to anything that would support a finding that the trial court abused its discretion in rejecting Appellant's weight of the evidence challenge.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/07/2021