J-A29044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDERICK D. BAKER, JR. | : | |
| | : | |
| Appellant | : | No. 769 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 13, 2023
In the Court of Common Pleas of Beaver County
Criminal Division at CP-04-CR-0001711-2022

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                 **FILED:  January 5, 2024**

Frederick D. Baker, Jr. (Appellant), appeals from the judgment of sentence imposed after a jury convicted him of retail theft.  **_See_** 18 Pa.C.S.A. § 3929(a)(1).  We affirm.

The Commonwealth initially charged Appellant with retail theft as well as defiant trespass.  The Commonwealth alleged

> that on October 2, 2022, [Appellant] walked out of the Walmart located at 100 Chippewa Town Center in Beaver Falls with a hoverboard without paying for the item.  Walmart Asset Protection showed responding officers video surveillance footage which depicted [Appellant] walking past the last point of sale with the hoverboard without paying for it.  After watching this surveillance video, officers placed [Appellant] under arrest.  Officers subsequently discovered that [Appellant] had a criminal history of numerous prior retail theft convictions.
>
> [Appellant] was held for trial on the Retail Theft and Defiant Trespass charges after a Preliminary Hearing on October 14, 2022, ….

The [trial c]ourt held a jury trial … on March 13-14, 2023. Following trial, on March 15, 2023, the jury found [Appellant] guilty of Retail Theft (F-3) and Defiant Trespass (M-3). On April 12, 2023, the [c]ourt sentenced [Appellant] to serve a term of imprisonment of 16 months to 7 years for Retail Theft, and 6 to 12 months for Defiant Trespass, to run concurrent to the Retail Theft sentence.

Counsel for [Appellant] filed a Post-Sentence Motion on April 17, 2023. In his Motion, [Appellant] raised the following issues: (1) [Appellant's] conviction of Retail Theft at Count 1 was against the weight of the evidence, and (2) [Appellant's] conviction of Defiant Trespass at Count 2 was not supported by sufficient evidence. As to the second issue, [Appellant] argued specifically that the Commonwealth did not present sufficient evidence at trial to show that [Appellant] defied an order to leave the premises that had been personally communicated to him by the property owner or another authorized person.

Following Oral Argument on [Appellant's] Motion, the [trial c]ourt issued an Order on June 13, 2023, in which it granted [Appellant's] request for judgment of acquittal for Defiant Trespass at Count 2 and vacated [Appellant's] sentence for that conviction. In that Order, the [c]ourt also denied [Appellant's] request for a new trial for the Retail Theft conviction at Count 1, and stated that [Appellant's] sentence on that conviction remain[ed] in effect.

[Appellant] filed a Notice of Appeal to the Superior Court on July 3, 2023.

Trial Court Opinion, 8/16/23, at 1-3 (footnotes omitted).[1]

On appeal, Appellant presents the following question:

WHETHER THE APPELLANT'S CONVICTION SHOULD BE REVERSED AS BEING AGAINST THE WIEGHT [*sic*] OF THE EVIDENCE?

Appellant's Brief at 7.

---

[1] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement.

Our standard of review of a weight claim is well-settled:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (citing *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015)).

When a weight challenge "is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012). Any conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve. *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced

by the trial judge when reviewing a trial court's determination [as to whether] the verdict is against the weight of the evidence." ***Id.***

Appellant argues his conviction of retail theft was "clearly against the weight of the evidence" given Appellant's "plethora of interaction[s] with Walmart employees and his multiple attempts to complete transactions that day." Appellant's Brief at 11.[2] According to Appellant,

> [h]e tried and failed to complete his purchases at the first self-checkout line. [Appellant] finally partially completed a transaction at the next self-checkout line, but mistakenly failed to include the hoverboard in his purchase. Despite being accused of theft by Walmart security, [Appellant] waited for and voluntarily spoke to police once they arrived. While a reasonable jury could conclude that [Appellant] is a terrible shopper, a finding of guilt in regard to retail theft under these facts is clearly against the weight of the evidence. As the verdict, given the weight of the evidence, should clearly shock the [conscience] of the court, the trial court abused its discretion in denying Appellant's Post-Sentence motion for a new trial based on the weight of the evidence claim.

***Id.*** at 11-12.

Instantly, the jury found Appellant guilty of retail theft as defined in Section 3929(a)(1) of the Crimes Code. Retail theft occurs when a person:

> (1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof; …

18 Pa.C.S.A. § 3929(a)(1).

---

[2] The Commonwealth has advised it "does not intend to file a brief in response to the brief filed on behalf of Appellant in [this] case." Letter, 10/16/23.

At trial, the Commonwealth presented testimony from three witnesses: Lilyana Risolio, an asset protection investigator at the Chippewa Walmart; Mitchell Krovisky, a Walmart "check-out host"; and Chippewa Township Police Officer Thomas Paranuik. Appellant did not testify or present any defense witnesses.

*Evidence*

Ms. Risolio stated that her job is to "protect merchandise from customer theft." N.T., 3/13/23, at 47. Ms. Risolio was working on October 2, 2022, when the assistant store manager asked her to observe Appellant. *Id.* at 48. Ms. Risolio saw Appellant go to the self-checkout line with a dirt bike and hoverboard. *Id.* at 53-54. According to Ms. Risolio, she "just observed" and "couldn't hear anything." *Id.* at 61. However, she saw Appellant "ring up" and pay for the dirt bike, but not the hoverboard. *Id.* at 58. Without objection, the Commonwealth introduced video surveillance which corroborated Ms. Risolio's testimony. *Id.* at 59; Commonwealth Exhibit 3.

Ms. Risolio's co-worker, Mr. Krovisky, also testified to working at the Chippewa Walmart on October 2, 2022. Mr. Krovisky stated that as a check-out host, his job was to

> basically patrol the whole entire self-checkout area, make sure everyone is okay. If any customer needs assistance, then I go up and I can help them, and we're also checking to make sure that everything's going well, everything's scanned, everyone is scanning their stuff and things are ringing up correctly, like right prices and everything like that.

N.T., 3/13/23, at 86-87.

With respect to Appellant, Mr. Krovisky testified that he encountered Appellant when Appellant

> came up to the self-checkout and scanned the [dirt bike], and then [Appellant] called me over and he said, "This bike is the wrong price." I was like, "Okay." So then I asked him how much it was … and he tells me that it's a certain price online, and I check that. It's true. [I g]o in and I change the price of the bike, and once I do that, then I ask [Appellant], "Is everything else in the cart paid for?" There was a bike, there was a bow, and there was also a hoverboard, and he says, "Yes."

*Id.* at 88.

The trial court summarized the evidence regarding Appellant's attempt to exit the store.

> After paying for the [dirt] bike at the grocery self-checkout, [Appellant] proceeded to leave the Walmart. [Appellant] walked past Walmart's receipt checker while she attempted to scan his receipt; [Appellant] did not stop to allow her to properly check his receipt and the items in his cart. When [Appellant] had walked just outside the Walmart and into the vestibule area where the shopping carts are kept for customer use, Ms. Risolio and another asset protection investigator confronted [Appellant]. Ms. Risolio stopped [Appellant's] shopping cart, which caused Appellant to become agitated and aggressive. [Appellant] cursed at Ms. Risolio and called her a "bitch," and told her "don't touch my fucking cart." Ms. Risolio informed [Appellant] that he had unpaid merchandise in his cart and pointed at the hoverboard, which was still in his cart. [Appellant] then said, "My bad," and told Ms. Risolio that he could pay for the hoverboard, but Ms. Risolio told him that it does not work that way since he had already passed the last point of sale. Ms. Risolio testified at trial that [Appellant] took the hoverboard out of his cart and threw it toward her. Ms. Risolio took several steps back to keep space from [Appellant] since he continued acting aggressively. The hoverboard landed in front of Ms. Risolio's feet[,] where it was later picked up by the other asset protection investigator. At this point, Ms. Risolio called the police to report the incident. [Appellant] then left the vestibule and proceeded toward the parking lot without the hoverboard, but with the bike and bow still in his cart. [Appellant]

proceeded to load the [dirt] bike and the bow into his car. While on the phone with the police, Ms. Risolio observed [Appellant] from the sidewalk outside the vestibule to make sure that he did not attempt to leave the premises before officers arrived.

When police arrived at the scene, one responding officer, Officer Thomas Paraniuk, spoke with [Appellant]. Officer Paraniuk stayed with [Appellant] while his partner, Officer Delmonico, went into the Walmart to speak with employees and observe Walmart's video surveillance footage. After viewing the surveillance footage, officers arrested [Appellant].

Trial Court Opinion, 8/16/23, a 5-6 (citations to notes of testimony and footnote omitted).

At trial, Officer Paraniuk testified he was wearing a body camera when he encountered Appellant. N.T., 3/13/23, at 111. The Commonwealth introduced video from the body camera into evidence, and the video was played for the jury with "certain redactions" previously agreed upon by the Commonwealth and defense counsel. *Id.* at 113-14; Commonwealth Exhibit 8. Officer Paraniuk stated:

On the scene, I spoke with [Appellant]. Now, I stayed with [Appellant] and my partner, Officer Delmonico, who was on scene at the time that you saw briefly in the camera footage, he went back in and spoke with other employees in Walmart.

N.T., 3/13/23, at 133.

Consistent with the above evidence, the jury convicted Appellant of retail theft. The trial court subsequently denied the weight claim Appellant raised in his post-sentence motion. The trial court reasoned:

Review of the evidence presented at trial does not shock the conscience of this [c]ourt. The Commonwealth presented eyewitness testimony from two Walmart employees and a

- 7 -

responding officer tending to show that on the day of the incident, [Appellant] selected a hoverboard displayed by Walmart for sale, placed it in his shopping cart, concealed it by placing the [dirt] bike on top of it in the cart, and attempted to leave the store without paying for the item. Trial T. Vol. II at 52-53, 61-62, 64-69, 71. Mitchell Krovisky, the Walmart self-checkout host, also testified that when he was assisting [Appellant] at the self-checkout counter, he asked [Appellant] whether he had paid for the items in his cart, including the hoverboard, and [Appellant] stated he had paid for the items. *Id.* at 60, 88-89, 97. Finally, the Commonwealth submitted numerous video exhibits into evidence, depicting [Appellant's] course of conduct throughout his time at the Walmart on the day of the incident, October 2, 2022. *Id.* at 50-68, 90-92, 123-130. The Commonwealth also presented video footage that was taken by body-cameras worn by responding officers on the day of the incident, which corroborated the footage from Walmart's video surveillance cameras. *Id.* at 112-14. Thus, the [c]ourt finds that the jury's verdict did not shock the conscience and was therefore not against the weight of the evidence.

At trial, the Commonwealth presented the testimony of [Appellant] from the Preliminary Hearing. Trial T. Vol. II at 119. These portions of the Preliminary Hearing Transcript were read and admitted into evidence at trial. *Id.* At the Preliminary Hearing, [Appellant] testified that he intended to buy the hoverboard for his son. *Id.* at 121. [Appellant] quickly changed his mind however, and decided to buy the [dirt] bike instead. *Id.* [Appellant] testified at the Preliminary Hearing as follows:

> My son wanted a hoverboard, so I turned to go over there. I see the hoverboard. My intentions, well, intention to buy the hoverboard. I said "Nah." But I don't. I grab this motorcycle, a little Razor motorcycle. It cost $388, with taxes like 400 something. This hoverboard cost 198. So I am totally spaced out about this hoverboard. I'm so excited about this big motorcycle I'm about to get my son. So I throw the motorcycle on top of the cart.

*Id.* When this testimony was presented at trial, the jury was free to make its own determination as to the credibility of [Appellant's] Preliminary Hearing testimony. The jury determined that [Appellant] intended to permanently deprive Walmart of the

- 8 -

hoverboard, and that he was therefore guilty of retail theft. [Appellant's] assertion that he had forgotten that the hoverboard was in his cart does not change the fact that the Commonwealth presented sufficient evidence at trial to prove that [Appellant] had actually not forgotten about the hoverboard in his cart, and had instead used the bike to conceal the hoverboard, which constitutes evidence that [Appellant] intended to permanently deprive Walmart of its merchandise. Therefore, [Appellant's] retail theft conviction was not against the weight of the evidence.

Trial Court Opinion, 8/16/23, at 11-12.

The trial court's reasoning is sound. Evidence from the Commonwealth's three witnesses and video exhibits[3] support the jury's finding that Appellant took possession of the hoverboard with the intention of depriving Walmart "of the possession, use or benefit of such merchandise without paying the full retail value thereof." 18 Pa.C.S.A. § 3929(a)(1). Thus, the trial court did not abuse its discretion in denying Appellant's weight claim.

Judgment of sentence affirmed.

---

[3] "At trial, the Commonwealth presented six exhibits consisting of videos taken by Walmart's video surveillance cameras from several different vantage points. The Commonwealth also presented video footage that was taken by body-cameras worn by responding officers on the day of the incident." Trial Court Opinion, 8/16/23, at 3-4 n.4 (citations to notes of testimony omitted).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/5/2024