J-S20015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DEREK WASHINGTON | |
| Appellant | No. 106 EDA 2016 |

Appeal from the Judgment of Sentence December 8, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0008218-2014
CP-46-CR-0008223-2014

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:　　　　　　　　**FILED AUGUST 07, 2017**

Derek Washington appeals from the judgment of sentence of seven to fifteen years incarceration imposed after the court found him guilty of three counts of robbery.  We affirm.

This matter arose from three separate incidents occurring in Norristown, Montgomery County, during which Appellant took another person's property.  On August 22, 2014, at approximately 8:30 p.m., Appellant followed the first victim, Eduardo Hernandez, as Mr. Hernandez walked home from work.  Appellant engaged Mr. Hernandez in small talk with the purported intent of drumming up sales of cocaine.  Mr. Hernandez, in fear that Appellant would harm or rob him, attempted to elude Appellant.  Nevertheless, Appellant continued to follow Mr. Hernandez and, eventually,

grabbed him by the arm, turned Mr. Hernandez partially towards himself, and placed a gun at Mr. Hernandez's side. Appellant took cash from Mr. Hernandez and threatened to shoot him if he did not give him all the money he had on his person. Mr. Hernandez managed to temporarily distract Appellant, which afforded him the opportunity to flee into the safety of a nearby restaurant. He did not immediately report the robbery to the police.

Over the course of the next few days, Mr. Hernandez observed Appellant in the vicinity of Mr. Hernandez's place of employment, once on August 23, and again on August 27, 2014. After this second sighting, Mr. Hernandez contacted a police officer to report the robbery and subsequent sightings. The officer informed Mr. Hernandez to contact police if he saw Appellant again.

The second incident occurred at approximately 11:30 p.m., on August 26, 2014. Mr. Hernandez's co-worker, Barbara Morales, was parked at a BP gas station a few blocks from their shared place of employment. As Ms. Morales returned to her parked car, Appellant approached her, placed a gun in her side, and demanded money. After Ms. Morales insisted that she did not have any money, Appellant took her cell phone and fled the area. Ms. Morales spoke to the police the following morning, and described her assailant as black male who was shorter than 5'10", between thirty and thirty-five years old, who had a slight goatee.

The third incident occurred during the early afternoon on August 29, 2014. At this time, Domenete Jackson was walking westbound on Marshall Avenue and openly counting money. Appellant approached Ms. Jackson, snatched the cash from her hands, and ran away. Ms. Jackson indicated that she was carrying approximately $150 in cash. She later identified Appellant as her attacker through a police photo line-up.

On that same day, Mr. Hernandez observed Appellant walking by his place of employment. He contacted the police and described Appellant as a black male wearing a black sweatshirt with white writing and a red hood, red shorts, and black shoes. Mr. Hernandez indicated that Appellant was likely traveling to a nearby grocer on the 400 block of West Marshall Street. Police officers, including Corporal Eric Gergel, were dispatched to the area. Corporal Gergel searched the area around the grocery store, but was unable to locate Appellant. He did speak with an individual who informed the officer that a person matching the description was known to frequent the area around the 700 block of West Marshall Street, a few blocks from the store.

Shortly thereafter, Corporal Michael Bishop observed a black male wearing red shorts, a black sweatshirt with a red hood, and black shoes walking down the 700 block of West Lafayette Avenue with a companion. Corporal Bishop, presuming this to be the suspect, followed the man, but briefly lost sight of him when he turned a corner. In order to locate the suspect's whereabouts, the officer sought the aid of a man sitting on a

nearby porch. That observer indicated that the suspect had entered an adjacent apartment building.

Officers converged on the apartment building. Corporal Bishop knocked on the door of a first floor apartment and was permitted entry by the lessee, Denise Bivens. The officer observed Appellant, who was wearing red shorts and black shoes, sitting on the couch. Corporal Bishop, believing this person to be the suspect, detained Appellant and brought him outside.

Mr. Hernandez and Ms. Morales were transported, separately and at different times, to the apartment building to identify Appellant. Each victim immediately recognized Appellant as their assailant. A later search of Ms. Bivens' apartment uncovered a black BB gun manufactured to look like a firearm, and a black sweatshirt with a red hood, which was found underneath the couch that Appellant was sitting on. Appellant was arrested, and after being provided his *Miranda* warnings,[1] he made inculpatory statements to the police. Based on the foregoing, Appellant was charged with a litany of offenses.

On April 17, 2015, Appellant filed a motion to suppress the statements that he made following his arrest as the fruit of an illegal arrest, and contending that the identification procedure utilized by the police was unduly suggestive. That same day, Appellant filed a separate motion to suppress

_____

[1] *Arizona v. Miranda*, 384 U.S. 436 (1966).

his identification, again relying on the allegedly highly suggestive manner in which that identification took place.[2]  Following a hearing on Appellant's suppression motions, the court denied relief.  However, during that hearing, Appellant noted the existence of an outstanding Rule 600 challenge that he had filed on March 31, 2015.  The court indicated that it was ready to proceed to trial, and that Appellant otherwise had an open motion for a continuance since Appellant's attorney, James P. Lyons, Esquire, had a family emergency during the suppression hearing, and was replaced by another lawyer in his firm, Nicholas J. Reifsnyder, Esquire.  Appellant requested that the trial be rescheduled until Attorney Lyons was available. The court opined that a Rule 600 challenge would likely fail, but nevertheless, permitted defense counsel to argue the matter at a later date. Appellant did not pursue the motion further.

Finally, on August 8, 2015, the court held a stipulated bench trial.  The Commonwealth offered the notes of testimony of the suppression hearing, the victims' statements to police, and other exhibits, which were entered into the record, without objection, by the court.  After reviewing this evidence, the court found Appellant guilty of one count each of robbery as it relates to Ms. Jackson, Ms. Morales, and Mr. Hernandez, and other related charges.  The court subsequently sentenced Appellant to an aggregate

---

[2] This motion to suppress was later amended on June 18, 2015.

sentence of seven to fifteen years imprisonment for three counts of robbery. The remaining charges either merged for sentencing or were *nolle prossed*. Appellant filed a timely appeal and complied with the court's order to file a Rule 1925(b) concise statement of errors complained of on appeal. The court authored a Rule 1925(a) opinion, and this matter is ripe for our review.

Appellant raises twelve issues for our consideration:

1. The trial court erred in finding sufficient evidence to prove robbery, f-3, as there was no proof of force, however slight, in the matter involving Ms. Jackson, 8218-14.

2. The trial court erred in not finding a violation of Rule 600(e), based on the time prior to June 23, 2015.

3. The trial court erred in finding that there was reasonable suspicion to stop [Appellant] considering the inconsistency between the information from the anonymous informant and where [Appellant] was first observed.

4. The trial court erred in finding that there was reasonable suspicion to stop [Appellant] considering the inconsistency between the information that the black male was walking alone, but [Appellant] was followed while walking with a white female.

5. The trial court erred in finding sufficient probable cause for a police-citizen interaction to escalate into an investigative detention based upon erroneous information about where to find the person, when [Appellant] was seized at the apartment.

6. The trial court erred in failing to suppress the one on one show-up as overly suggestive, in total, and specifically due to the:

a) discrepancy in the description of the robber, and the appearance of [Appellant].

b) delay between the alleged robbery and the show-up.

c) lack of identifying information given closer to the time of the incident as no police report was filed by either Ms. Morales or Mr. Hernandez, until days after their respective incidents.

d) differences in the descriptions of the robber given by Ms. Morales and Mr. Hernandez.

7. The trial court erred in finding that there was reasonable suspicion to stop [Appellant] considering the inconsistency between the information from the anonymous informant and where [Appellant] was spotted.

8. The trial court erred in not suppressing the sweatshirt, identification and statement as fruit of the poisonous tree.

a) Additionally, the sweatshirt that was seized was not the same as the description.

9. The trial court erred in allowing the suppression hearing to be based upon unrebutted and unsubstantiated hearsay, as the live testimony of the alleged victims was absent.

10. The trial court erred when there was no colloquy of [Appellant] when retained counsel was replaced by another attorney from the firm in the middle of the suppression hearing.

11. The trial court erred when there was no on the record colloquy as to the contents of any plea offer, the rejection of the plea offer, and the potential exposure if the plea was not accepted, therefore, the [A]ppellant's decision to pursue a trial was not voluntary, knowing, and intelligent.

12. The trial court erred when there was no correction of the time credit listed on the sentencing dates.

Appellant's brief at 4-6.

Appellant's first issue challenges the sufficiency of the evidence offered to convict him of the robbery of Ms. Jackson pursuant to 18 Pa.C.S. § 3701(a)(1)(v). When we review a challenge to the sufficiency of the evidence,

> [W]e examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the [fact-finder's] finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Lloyd*, 151 A.3d 662, 664 (Pa.Super. 2016) (citation omitted). The relevant provision reads:

(a)    Offense defined.-

    (1)    A person is guilty of robbery if, in the course of committing a theft, he:

        (i)    inflicts serious bodily injury upon another;

        (ii)    threatens another with or intentionally puts him in fear of immediate serious bodily injury;

        (iii)    commits or threatens immediately to commit any felony of the first or second degree;

        (iv)    inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

        (v)    physically takes or removes property from the person of another by force however slight; or

        (vi)    takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with

> the intent to deprive the financial institution thereof.

18 Pa.C.S. § 3701(a)(1).

In support of his position, Appellant relies on statements made by Ms. Jackson following the robbery which indicated that she was not harmed during the incident, and that Appellant had made physical contact only with the money he took from her. He maintains that he did not apply either actual or constructive force to Ms. Jackson's person in taking possession of her property, and that she did not express fear during the encounter.

Instantly, the certified record reveals that Appellant approached Ms. Jackson while she was walking on West Marshall Street. At the time, Ms. Jackson was openly counting approximately $150 in cash. She stated that a man, who she later identified from a photo line-up as Appellant, took the money from her hands and ran away. She was not harmed during the encounter.

When viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we find that it supports a finding that Appellant took Ms. Jackson's money with force however slight. We have long held that "[a]ny amount of force applied to a person while committing a theft brings that act within the scope of the robbery statute." **Lloyd**, **supra** at 665 (citing **Commonwealth v. Bedell**, 954 A.2d 1209, 1213 (Pa.Super. 2008)). Moreover, unlike robbery as defined by 18 Pa.C.S. §§

3701(a)(1)(i)-(iv), robbery under § 3701(a)(v) does not require a showing that the victim was harmed, threatened, or otherwise put in fear. Rather, the offense requires only a showing that Appellant took property from another utilizing force, however slight. Indeed, "the degree of force is immaterial, so long as it is sufficient to separate the victim from [her] property in, on or about [her] body." ***Bedell***, ***supra*** at 1213. In order to obtain the cash that Ms. Jackson held on her person, Appellant necessarily utilized force to separate her from her property. Hence, no relief is due.

Next, Appellant claims that the trial court erred in failing to grant his Rule 600 motion. We review Rule 600 motions under the following standard of review:

> In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonably, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Miskovitch***, 64 A.3d 672, 677 (Pa.Super. 2013) (internal citations and quotation marks omitted). Appellant filed a petition for nominal bail pursuant to Rule 600 requesting that he be released on bail

since he had remained in pre-trial incarceration for more than 180 from the date his complaint was filed. Rule 600 states, in pertinent part:

> (B) Pretrial incarceration
>
> Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of
>
> (1)    180 days from the date on which the complaint is filed; or
>
> . . . .
>
> (D)    Remedies
>
> . . . .
>
> (2)    Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

Appellant asserts that certain statements made by the court during the suppression hearing effectively denied his outstanding Rule 600 motion.[3] He

---

[3] The parties and the court characterized Appellant's motion as a Rule 600(E) motion, referring to the relevant section of a previous version of the Rule. Prior to its rescission, Rule 600(E) read, "No defendant shall be held in pre-trial incarceration on a given case for a period exceeding 180 days excluding time described in paragraph (C) above. Any defendant held in

*(Footnote Continued Next Page)*

claims that it is undisputed that more than 180 days had passed while Appellant was incarcerated awaiting trial, and therefore, the court erred in failing to release him from prison.

After the court ruled on Appellant's suppression motion, the following exchange occurred:

> Defense Counsel:  Your Honor, we would like to request a continuance so that Mr. Lyons can try the case.
>
> Trial Court:  All right.  Well, your contention is that you're entitled to being released on Rule 600(E), I was prepared to look at that, but if you're going to ask for a continuance of your own case, I would be a little hard-pressed to say that I'm going to address your 600(E) at this stage.
>
> Defense Counsel:  Your Honor, I would ask you to consider it anyway in light of the circumstances.
>
> Trial Court:  Why would I do that?  I am ready to try the case.
>
> Prosecutor:  The Commonwealth is prepared to go forward.
>
> Trial Court:  The Commonwealth is ready to try the case.  I have a jury panel upstairs.  The defendant is the one asking –
>
> . . . .
>
> Trial Court:  Give me a case on it.  I'm not asking for your opinion.  I'm asking for a Rule 600(E) case that says that nominal bail must be granted in a case in which the case – albeit there may have been a violation before or not.  I don't know. I'm not conducting a 600(E) at this stage.  But we're ready to

_(Footnote Continued)_ ───────────────

excess of 180 days is entitled upon petition to immediate release on nominal bail."  Pa.R.Crim.P. 600(E) _rescinded_ October 1, 2012, effective July 1, 2013, 42 Pa.B 6622 (Oct. 20, 2012). However, the new Rule 600, effective July 1, 2013, discussed _infra_, applies herein.

conduct it now, and I'm trying to figure out, even if we conducted it now, how would you be heard to –

Defense Counsel:   One second, Your Honor.   Your Honor, we would not ask to be heard on 600(E) right now.

. . . .

Defense Counsel:   Your Honor, after talking to [the Prosecutor], maybe – I don't know what your schedule looks like for next week.   It might be a good idea to bring this thing back.   We'll be able to produce –

Prosecutor:  As a 600.

Defense Counsel:   I'll argue the law.   We'll just argue it as a 600(E) motion.   I'll present what I can to the Court in the way of law in the way of –

. . . .

Trial Court: . . . I will grant the continuance.   We're beyond that. I'm granting the continuance.   What you're asking for is I'd like a continuance and I'd like you to rule on the 600(E).   I didn't say I wouldn't.

Defense Counsel:   No, but I can gather based on what you've said already that it's going to be denied.

Trial Court:   I'm telling you I think it's fair.   I have researched this because somebody said we want to raise it[.]

. . . .

Defense Counsel:   Your Honor, [Appellant is] still requesting a relist.   I would ask that we not hear the Rule 600(E) today. Maybe the end of the week or earlier next week so I can get this law together.

. . . .

Trial Court:   . . . All right.   The case is to be relisted to the [trial court's] next trial list.   If the parties agree that they want to

hear 600(E), then that's a miscellaneous matter that you can bring before me, but, again, you understand how that works? Either they come in and say, all right, we're going to do a 600, but with a Constitutional exception, and then I can decide it or you just leave it open for another day.

Defense Counsel: Understood. And – okay. So we would contact your chambers.

N.T. Suppression Hearing, 6/23/15, at 19-38.

Appellant alleges that this interaction amounted to a constructive denial of his Rule 600 motion. However, the above-language clearly indicates that the court was not conducting a Rule 600 hearing at that time. Moreover, regardless of the court's statements as to its understanding of the law at that time, Appellant expressly requested that the hearing be held later in the week, after Attorney Reifsnyder had time to research the applicable law. Indeed, that is the precise understanding that each party agreed to at the conclusion of the suppression hearing. The court stated that it would rule on Appellant's Rule 600 motion after Appellant had supplied it with case law in support of his position and requested a hearing on the matter.

In light of the trial court's willingness to entertain argument from the parties regarding Appellant's Rule 600 issue at a later time, we find that its statements at the suppression hearing did not amount to a denial of his Rule 600 motion. Further, Appellant did not provide the court with case law, or contact the court to schedule a Rule 600 hearing, and accordingly, the trial

court never ruled on the motion. Hence, there is no decision by the trial court for this Court to review, and no relief is due. *See Commonwealth v. Dougherty*, 860 A.2d 31, 39-40 (Pa. 2004) (finding defendant's pre-trial motion to dismiss unreviewable since defendant did not pursue issue and, thus, trial court never ruled on the motion).

Appellant's third, fourth, fifth, and eighth issues contest the court's denial of his suppression motion based on its finding that there was reasonable suspicion for his seizure.[4] Thus, we consider them together. We are guided by the following principles:

> Our standard of review for a challenge to the trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

---

[4] We observe that Appellant did not develop an argument regarding his seventh issue, which questioned inconsistencies between the information contained within a supposed anonymous tip provided by a bystander at the grocery store as to Appellant's whereabouts, and his actual location at the time of his detention. Therefore, it is waived. *Commonwealth v. Roche*, 153 A.3d 1063, 1072 (Pa.Super. 2017) (noting "[t]he failure to properly develop a claim renders an issue waived.").

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted).

We recognize three categories of encounters between citizens and the police:

> (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the function equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa.Super. 2016) (citation omitted). In order to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch" that a defendant committed a crime. *Commonwealth v. Williams*, 125 A.3d 425, 432 (Pa.Super. 2015) (citation omitted). In making this determination, we consider the totality of the circumstances. *Id*.

Appellant contends that the information available to the officers at the time they entered Ms. Bivens' apartment was not sufficient to support reasonable suspicion. First, he points to supposed inconsistencies in the description provided to the police by Mr. Hernandez and his actual appearance at the time of his arrest. He emphasizes that he was not

- 16 -

wearing a sweatshirt, and that Mr. Hernandez indicated he was walking in the opposite direction, alone, rather than with a companion, as was the case when he was originally spotted by Corporal Bishop. He also highlights Mr. Hernandez's failure to contact police until a week after the robbery.

Here, Mr. Hernandez observed Appellant on three occasions within a week, after he was robbed at gunpoint. Following the final sighting, he contacted police and described Appellant as a "black male who was wearing a black sweatshirt with white writing on it and a red hood with red shorts and black shoes," walking in the vicinity of his workplace. N.T. Suppression Hearing, 6/22/15, at 24. Shortly thereafter, Corporal Bishop observed an individual matching this description only a few blocks from where Mr. Hernandez originally spotted him.

After Corporal Bishop temporarily lost sight of Appellant, a bystander directed the officer to the apartment complex from which Appellant was ultimately apprehended. Corporal Bishop discovered Appellant, a black man wearing red shorts and black shoes, located in the same building to which he had followed the suspect. At the time of his apprehension, Appellant's appearance was substantially similar to the information provided by Mr. Hernandez. Hence, based on the totality of the circumstances, the police officers had reasonable suspicion to detain Appellant while they waited for Mr. Hernandez and Ms. Morales to be transported to the scene for

identification, and we discern no error in the court's denial of Appellant's motion to suppress.

Appellant's sixth issue challenges the trial court's failure to suppress his identification. We remain guided by the same standard and scope of review of a trial court's suppression decision as enumerated above. *Yandamuri*, *supra*. Suppression of a pre-trial identification is warranted where it prevents police misconduct. *Commonwealth v. Lark*, 91 A.3d 165, 168-169 (Pa.Super. 2014). Suggestiveness is but one factor used to determine the admissibility of a pre-trial identification as the court must consider the totality of the circumstances in rendering a suppression ruling. *Id*. at 168. Thus, "[i]dentification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth v. Stiles*, 143 A.3d 968, 978 (Pa.Super. 2016) (citation omitted). When evaluating the reliability of an identification, "a suppression court should evaluate the opportunity of the witness to see the criminal at the time the crime occurred, the witness's degree of attention, the accuracy of any description given, the level of certainty when identification takes place, and the period between the crime and the identification." *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012) (citation omitted).

Appellant argues that the identification procedure relied upon by the police was not amendable to reliable identification by Ms. Morales and Mr. Hernandez. He maintains that the victims did not have an adequate opportunity to observe their attacker, and he contends that the presence of a firearm would have distracted Mr. Hernandez from properly observing his attacker. He also notes that the victims offered differing descriptions of their assailant, for example, Mr. Hernandez stated the suspect was bald, but also wearing a black hat. Appellant also emphasizes Mr. Hernandez's delay in notifying police of the robbery. He insists that, by waiting nearly a week to report the encounter to police, Mr. Hernandez's identification was not reliable since the timeframe for reliable identifications is very short. Finally, he asserts that the identification procedure was unduly suggestive since he was handcuffed when the victims viewed him and the only other person present near him was a police officer.

The suppression court remarked that Mr. Hernandez witnessed Appellant multiple times during the week following his robbery. It noted the detailed descriptions that he provided to the police each time he noticed Appellant during that time. The suppression court found that the slight differences between Mr. Hernandez's and Ms. Morales' descriptions of their assailant did not render the identification procedure unreliable, stating that both victims "immediately identified [Appellant] when they were brought to the show up and were certain that [Appellant] was the person who had

robbed them." Trial Court Opinion, 5/26/16, at 12. It did not find the delay between the robberies and the identification sufficient to undermine the validity of the procedure.

We find that, based on the totality of the circumstances, the identification procedure utilized by the police was not so unduly suggestive or unreliable as to warrant suppression. Contrary to Appellant's assertions, the record does not disclose that Mr. Hernandez was distracted by Appellant's firearm at the time of the attack. Rather, he reported that Appellant placed the weapon in his side. Mr. Hernandez stated that Appellant followed him for several blocks and engaged him in conversation. Further, he witnessed Appellant on three more occasions shortly after the attack, and provided a detailed description to the police immediately prior to identifying Appellant in person. Ms. Morales provided a description of her attacker only a day after her encounter, which substantially matched Mr. Hernandez's description. We do not find that any minor differences contained within those descriptions rendered Mr. Hernandez's and Ms. Morales' later identification of Appellant unreliable.

At the time of his detention, Appellant's appearance was largely in accord with the description provided only shortly before by Mr. Hernandez. In addition, both Mr. Hernandez and Ms. Morales immediately identified Appellant. Lastly, Appellant's reliance on the supposedly extended delay between the attack and Mr. Hernandez's contact with police as indicative of

an unreliable identification is unpersuasive. Mr. Hernandez reported seeing Appellant one day after his attack, five days after his attack, and finally, a week after his attack. We find this ongoing contact supports, rather than undermines, the reliability of Mr. Hernandez's identification. Thus, based on the totality of the circumstances, the factors outlined in **Sanders**, **supra**, militate in favor of admissibility, and the suppression court did not err in denying Appellant's motion to suppress. **See Commonwealth v. Moye**, 836 A.2d 973 (Pa.Super. 2003) (finding show up identification where defendant alone and handcuffed in police van not unduly suggestive since reliability factors weighed in favor of admissibility).

Appellant next argues that the suppression court erred in permitting the officers testifying at the suppression hearing to rely on hearsay statements made by the victims and other witnesses. Appellant did not object to these statements before the suppression court, and thus, this claim is waived. **See Commonwealth v. Richard**, 150 A.3d 504, 511 (Pa.Super. 2016) (failure to make timely objection at trial renders claim waived on appeal); Pa.R.A.P. 302(a).

Assuming, *arguendo*, that this matter was properly before us, Appellant would not be entitled to relief. We have long held that "certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted."

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1037 (Pa. Super. 2014). Here, the officers who testified during the suppression hearing relied on the statements made by Mr. Hernandez, Ms. Morales, and the individual in the grocery store as part of the search for, and investigation of, a suspected criminal. Hence, such testimony was offered only to show the information upon which the police acted, and this claim fails.

In his tenth issue, Appellant asserts that the suppression court erred by failing to colloquy him as to the effect of proceeding with Attorney Reifsnyder when Attorney Lyons was compelled to leave the suppression hearing due to an emergency. Appellant maintains that, if the trial court had apprised him of his right to seek a continuance, he would have done so in order to provide Attorney Lyons with an opportunity to advocate on his behalf. Appellant asserts that the court's failure in this regard subjected him to a "prejudicial hearing where counsel was not of choice or fully prepared to go forward." Appellant's brief at 38.

We find Appellant's assertions are belied by the record. Attorney Reifsnyder, who is employed by the same firm as Attorney Lyons, filed both motions to suppress, and the amended motion to suppress. *See* Defense Motion to Suppress Statement, 4/17/15 at unnumbered 2; Defense Motion to Suppress Identification, 4/17/15 at unnumbered 2; Defense Motion to Suppress Identification (Amended), 6/18/15 at unnumbered 2. Moreover,

during the suppression hearing, the court clarified, for the record, the sudden change in Appellant's representation:

> The Court: All right. I will note the absence of Mr. Lyons who has a family emergency. I assume he has spoken to the defendant and Mr. Reifsnyder, and you're okay to proceed?
>
> Attorney Reifsnyder: I am okay to proceed. I'm prepared to proceed, Your Honor. I was ready to go on this the last time.

N.T. Suppression Hearing, 6/22/15, at 53-54.

Appellant did not cite case law supporting the proposition that the court had a duty to inform him of his ability to request a continuance. Further, the court ensured that Attorney Lyons and Attorney Reifsnyder had communicated with Appellant prior to proceeding with the hearing. Contrary to Appellant's assertion, Attorney Reifsnyder indicated to the court that he was prepared to proceed, and since Attorney Reifsnyder authored the suppression motions at issue, we find no basis to afford Appellant relief.

Appellant's eleventh issue is that he did not provide a voluntary, intelligent, and knowing waiver of his right to a jury trial since the trial court failed to inform him, on the record, of the "plea offer that was made to [Appellant], the contents of the offer, discussion with counsel regarding the offer, or the parameters of the sentences offered." Appellant's brief at 40. He contends that the colloquy offered by the trial court "was insufficient to assure that [Appellant] understood the potential negative consequences of

rejecting the plea bargain." *Id*. He concludes that this failure warrants resentencing.

This claim fails for at least two reasons. First, there is no indication within the record that there was a guilty plea bargain offered to Appellant. Second, to the extent that Appellant's argument suggests that his waiver of a jury trial colloquy was constitutionally infirm, we observe that a voluntary waiver of a jury trial will be found knowing and intelligent when the "on-record colloquy indicates that the defendant knew the essential ingredients of a jury trial which are necessary to understand the significance of the right being waived." *Commonwealth v. O'Donnell*, 740 A.2d 198, 207-208 (Pa. 1999) (citation omitted). Our High Court observed that "[t]hese essential ingredients are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Id*.

Instantly, Appellant's argument fails at the outset since a valid jury waiver colloquy need not inform Appellant of any plea offer made to him, the contents of that offer, or his discussions with counsel regarding that offer. Simply, it is counsel's duty, not the court's, to advise Appellant of the

"potential negative consequences of rejecting the plea bargain."[5]  Appellant's brief at 40.  Thus, this claim fails.

Finally, Appellant has presented no argument regarding his twelfth issue, which relates to the calculation of his time served.[6]  Hence, this claim is waived.  **Commonwealth v. Noss**, 2017 PA Super 139 (filed May 9, 2017) at  *9-10 (finding argument waived where appellant raised issue in statement of questions involved but failed to argue issue in argument section of brief).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2017

---

[5] Insofar as Appellant's argument can be read as challenging counsel's stewardship during the waiver colloquy, that matter must be deferred to collateral review.  **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (holding that, absent specific circumstances not present herein, claims of ineffective assistance of counsel should be deferred to PCRA review).

[6] Moreover, the trial court filed an amended sentencing sheet supposedly correcting any error in the calculation of Appellant's time served.