J-S22010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICO JAMAR MURPHY | : | |
| | : | |
| Appellant | : | No. 1091 WDA 2022 |

Appeal from the PCRA Order Entered March 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010514-2014

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.: **FILED: September 15, 2023**

Appellant, Rico Jamar Murphy, appeals from the March 30, 2021 order entered in the Court of Common Pleas of Allegheny County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

This Court previously summarized the factual history as follows:

On June 17, 2017, [the victim] was riding a bicycle in the Hazelwood section of the City of Pittsburgh[, Pennsylvania,] when he suffered two gunshot wounds. One shot hit him in the back and penetrated vertebrae. The other shot entered his stomach. After surgery, [the victim] had difficulty walking. He had to use a cane. He had very little memory of the day of the shooting. He testified that he never saw the shooter.

[An eyewitness] testified that she was with her mother leaving a [drug] store in her mother's Ford Mustang in the Hazelwood section of Pittsburgh. As she and her mother were driving down Tecumseh Street, she looked to her left and observed [the victim] riding a bicycle. As she watched [the victim], she observed Appellant approach [the victim] and shoot [the victim] two times. [The eyewitness] had an unobstructed view of Appellant and

clearly identified him as the shooter. She saw [the victim] fall to the ground and [the eyewitness'] mother accelerated their vehicle, attempting to pursue Appellant as he fled from the scene. They observed Appellant flee down a pathway near the scene of the shooting. [The eyewitness], fearing that Appellant had a gun, convinced her mother to discontinue pursuit of Appellant and return to [the victim] to render first aid. They attended to [the victim] and called 911 [emergency services. The eyewitness'] mother talked to [the victim] in an effort to keep him calm while emergency personnel were en route.

After emergency personnel arrived, [the eyewitness] was interviewed by the police. She informed [police] officers that she saw the firearm used in the shooting. She described it as blue or purple. She provided a description of the shooter's clothing as a white t-shirt [and] long black basketball shorts. She also described the shooter as a skinny, tall black male wearing a hat. Approximately ten minutes after the police arrived and [] apprehended Appellant, [the eyewitness] was taken to Lytle Street, where Appellant was [being held] in [police] custody, and she identified [Appellant] as the person who shot [the victim. Appellant] did not have a white t-shirt on at the time. He also was not wearing a hat. He was, however, wearing a tank top.

Detective Douglas Butler testified that he was one of the initial responders to the scene. Relying on information supplied to him when he arrived on scene, he and two other [police] officers began canvassing the area looking for the shooter. As he was walking on Lytle Street, he was greeted by a hysterical resident claiming that while her two sons were playing in the back yard, a black male jumped her fence[,] and the black male was holding a blue gun. The residents ran into the house. Detective Butler, Detective Fetty[,] and Detective O'Dille continued to canvass the area. Detective Butler eventually located Appellant lying face down in some brush, attempting to hide from the police. Appellant told Detective Butler that he [discarded] the firearm. Detective Fetty, who responded to the scene, observed Appellant just prior to his apprehension. Appellant was holding an object wrapped in a white t-shirt. Detective Fetty observed Appellant attempting to hide the item and the white t-shirt under a fence. After Appellant was placed in custody, a blue Cobra Enterprise [0].380 caliber firearm wrapped in the white t-shirt was recovered from the area where Appellant was observed trying to hide it. Bullet casings from [0].380 caliber ammunition were found at the scene[,] and trial

testimony established that the casings were fired from the firearm recovered in this case.

After Appellant was taken into custody, he was interviewed by Detective Timothy Rush. Appellant initially told Detective Rush that he did not shoot [the victim] and he was in the area of the shooting because he had to go to the bathroom. Appellant claimed he became tired and laid down in the area where he was arrested. He also denied shooting [the victim]. After being confronted with the evidence that had been developed in this case, Appellant advised Detective Rush that he didn't want to go back to prison. He also asked Detective Rush "how much time he would get" if he were convicted of the charges relating to this incident.

Gun shot residue was found on Appellant's right hand, front and back.

***Commonwealth v. Murphy***, 2018 WL 5023665, at *1-*2 (Pa. Super. filed Oct. 17, 2018) (unpublished memorandum) (citation and original brackets omitted).

On August 31, 2016, a jury found Appellant guilty of aggravated assault – serious bodily injury (Count 2), aggravated assault – use of a deadly weapon (Count 3), persons not to possess, use, manufacture, control, sell or transfer firearms (Count 4), and recklessly endangering another person (Count 5).[1] On November 21, 2016, the trial court imposed an aggregate sentence of 12½ to 25 years' incarceration.[2]

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 6105(a)(1), and 2705, respectively.

[2] Appellant was found not guilty of attempted homicide (Count 1). Appellant was sentenced to 10 to 20 years' incarceration for Count 2, and for sentencing purposes, Count 3 merged with Count 2. The trial court imposed a sentence of 2½ to 5 years' incarceration on Count 4 with the period of incarceration set

On October 17, 2018, this Court affirmed Appellant's judgment of sentence. **Murphy**, 2018 WL 5023665, at *1. On April 16, 2019, our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Murphy**, 206 A.3d 1027 (Pa. 2019). Appellant did not seek discretionary review by the Supreme Court of the United States. As such, Appellant's judgment of sentence became final on July 15, 2019. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); **see also** U.S. Sup. Ct. R. 13(1) (stating that, "A petition for a *writ* of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.").

On May 5, 2020, Appellant filed *pro se* a PCRA petition, his first. Counsel was appointed and subsequently filed an amended PCRA petition on November 19, 2020. The Commonwealth filed an answer to Appellant's petition on February 18, 2021. On February 23, 2021, the PCRA court notified Appellant pursuant to Pennsylvania Rule of Criminal Procedure 907 of its intent to dismiss his petition and provided Appellant twenty days in which to file a

_____

to run consecutively to the sentence imposed on Count 2. The trial court imposed no further penalty on Count 5. Appellant received credit for 889 days for time served.

response. On March 14, 2021, counsel for Appellant filed a response. On March 30, 2021, the PCRA court dismissed Appellant's petition.

On March 30, 2022, Appellant filed *pro se* a petition to reinstate his appellate rights *nunc pro tunc*, which the PCRA court properly viewed as a second PCRA petition.[3] In his *pro se* petition, Appellant asserted that PCRA counsel was ineffective for failing to inform Appellant that his petition had been denied on March 30, 2021, and for failing to file a notice of appeal. *Pro Se* Petition to Reinstate Appellate Rights *Nunc Pro Tunc*, 3/30/22, at ¶4. On April 6, 2022, the PCRA court appointed new counsel to represent Appellant, and directed the Commonwealth to file a response to Appellant's petition. The Commonwealth filed its response on April 13, 2022.

On April 26, 2022, the PCRA court ordered Appellant to file an amended PCRA petition within 20 days. Appellant filed a counseled amended PCRA petition on June 30, 2022, again asserting that original PCRA counsel was ineffective for failing to inform Appellant of the denial of his first PCRA petition and for not filing a notice of appeal. Amended PCRA Petition, 4/26/22, at 12-14 (unpaginated). The Commonwealth filed an answer to Appellant's amended PCRA petition on August 24, 2022, in which the Commonwealth agreed that Appellant was entitled to collateral relief in the form of

---

[3] It is well-established that a "petition for reinstatement of PCRA appellate rights *nunc pro tunc* must be considered a second (and[, often times,] untimely) PCRA petition." **Commonwealth v. Fairiror**, 809 A.2d 396, 397 (Pa. Super. 2002), *appeal denied*, 827 A.2d 429 (Pa. 2003).

reinstatement of his appellate rights *nunc pro tunc*. On August 30, 2022, the PCRA court granted Appellant's petition to reinstate his appellate rights *nunc pro tunc*, and provided Appellant 30 days in which to appeal the March 30, 2021 order dismissing his first PCRA petition. Appellant filed a notice of appeal on September 20, 2022.[4]

Appellant raises the following issue for our review:

Whether the [PCRA] court erred in dismissing the amended [PCRA] petition filed on November 19, 2020[,] wherein it was asserted that trial counsel was ineffective for failing to request a [jury] instruction [pursuant to **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954)]?

Appellant's Brief at 4 (extraneous capitalization omitted).

Preliminarily, we consider the timeliness of Appellant's second PCRA petition (petition to reinstate his appellate rights *nunc pro tunc*) as it implicates our jurisdictional authority to review Appellant's claim. **See Commonwealth v. Reid**, 235 A.3d 1124, 1143 (Pa. 2020) (stating, "it is appropriate for an appellate court to consider *sua sponte* the timeliness of a PCRA petition from which *nunc pro tunc* appellate rights have been reinstated, even where the Commonwealth has not separately appealed (or appeals but then withdraws its appeal) from the order granting relief").

As discussed *supra*, Appellant's judgment of sentence became final on July 15, 2019. **See** 42 Pa.C.S.A. § 9545(b)(3). Therefore, Appellant had until

_____

[4] Both Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.

July 16, 2020 to file a timely PCRA petition. 42 Pa.C.S.A. § 9545(b)(1) (stating, a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner alleges and proves one of the three enumerated exceptions set forth herein). Appellant filed *pro se* his second PCRA petition on March 30, 2022, more than 20 months after the expiration of time in which to file a timely PCRA petition. As such, Appellant's second PCRA petition was patently untimely.

If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." **Commonwealth v. Brandon**, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented.[5] 42

---

[5] We note that effective December 24, 2018, the time-period in which to file a petition invoking one of the three exceptions was extended from 60 days to one year. 42 Pa.C.S.A. § 9545(b)(2). This amendment applies to claims arising one year prior to the effective date of the amendment, *i.e.*, December 24, 2017, or later. Act 2018, Oct. 24, P.L. 894, No. 146, § 3. Because Appellant filed his PCRA petition on March 30, 2022, this amendment applies, and Appellant had one year in which to file a petition that validly invoked any of the exceptions to the PCRA's time-bar.

Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018). If a petitioner fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief. *Spotz*, 171 A.3d at 676.

It is well-established that, to invoke the newly-discovered facts exception, the petitioner must plead and prove facts that were "unknown" to him or her, and that he or she could not uncover such facts with the exercise of "due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1274 (Pa. 2007); *see also Commonwealth v. Small*, 238 A.3d 1267, 1271 (Pa. 2020) (stating that, the newly-discovered facts exception "renders a petition timely when the petitioner establishes that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). PCRA counsel's acts or omissions that result in a complete foreclosure of appellate review of collateral claims can constitute ineffectiveness *per se* and may trigger the newly-discovered facts exception to the jurisdictional time-bar. *Commonwealth v. Hipps*, 274 A.3d 1263, 1269 (Pa. Super. 2022), *appeal denied*, 288 A.3d 1292 (Pa. 2022).

In his amended (second) PCRA petition, Appellant asserted

PCRA counsel provided ineffective assistance of counsel for failing to ensure [Appellant] had been informed of [the dismissal of] his previous PCRA[ petition] and his right to appeal. Prior to [the PCRA court's Rule 907] notice of intent to dismiss, [Appellant] expressed to counsel his desire to file a response in the instance his PCRA [petition] was dismissed. This request was acknowledged by PCRA counsel in a letter dated March 15, 2021, which informed [Appellant] of the [Rule 907 Notice.] PCRA counsel [] provided a copy of the letter (*see* Exhibit [A]) but did

- 8 -

> not use certified mail or any other records to document the date the letter was mailed. Additionally, PCRA counsel cannot confirm if [Appellant] received that letter, nor any other letters.
>
> PCRA counsel's only other correspondence with [Appellant] during the 30-day period to appeal was a letter dated April 3, 2021, which informed [Appellant] of the PCRA dismissal ([**see**] Exhibit B). PCRA counsel cannot confirm the mail date or if [Appellant] received the letter. PCRA counsel did not speak directly to [Appellant] until a [tele]phone conversation on [] June 4, 2021. During this conversation[, Appellant] again expressed his desire to appeal [the order dismissing his petition] and that he did not receive any information regarding [the dismissal of] his PCRA[ petition].

Amended PCRA Petition, 4/26/22, at 12-13 (unpaginated) (extraneous capitalization omitted).

A review of the record demonstrates that in a March 15, 2021 letter directed to Appellant, original PCRA counsel acknowledged Appellant "indicated that should the [PCRA] court order a dismissal [of his petition] following the Commonwealth's answer[, he] would like the opportunity to file a response." **Id.** at Exhibit A. Original PCRA counsel promised to keep Appellant "posted as to the [PCRA court's] decision." **Id.** In an April 3, 2021 letter directed to Appellant, original PCRA counsel provided Appellant with a copy of the order dismissing his PCRA petition and informed Appellant that he had 30 days in which to file a notice of appeal. **Id.** at Exhibit B. Current PCRA counsel certified to the PCRA court that original PCRA counsel would testify at an evidentiary hearing, *inter alia*, that original PCRA counsel mailed notice of the dismissal of Appellant's petition together with notice of Appellant's right to appeal but cannot confirm that Appellant received the notice. **Id.** at

Certification. The April 3, 2021 letter was mailed *via* the United States Postal Service without confirmation of Appellant's receipt. ***See id.***; ***see also*** Amended PCRA Petition, 4/26/22, at Certification (stating, original PCRA counsel would testify that she is unable to confirm Appellant's notice of his right to appeal the order dismissing his PCRA petition). Moreover, on December 10, 2021, Appellant sent a letter directed to the clerk of courts for the Court of Common Pleas of Allegheny County requesting a copy of his docket sheet because he "would like to see what is going on with this case." *Pro Se* Letter, 12/6/21. The record shows that original PCRA counsel failed to properly notify Appellant of the dismissal of his PCRA petition, advise him of his right to file a notice of appeal, ascertain his desire to pursue further action, and confirm that Appellant received relevant notices.

Under the circumstances, these acts and omissions by original PCRA counsel constituted ineffectiveness *per se*. As of December 10, 2021, Appellant was unaware of the status of his case and, in particular, that his PCRA petition had been dismissed. At some point following December 10, 2021, Appellant became aware that this first PCRA petition had been dismissed and that the period in which to file an appeal lapsed. As such, Appellant's second PCRA petition filed on March 30, 2022, setting forth a claim of original PCRA counsel's ineffectiveness *per se* satisfied the newly-discovered facts exception to the jurisdiction time-bar. Consequently, Appellant validly invoked jurisdiction in the PCRA court to grant him collateral relief by

reinstating his appellate rights *nunc pro tunc*, and we now turn to a review of Appellant's claim.

Appellant's issue raises a claim that trial counsel provided ineffective assistance. Appellant's Brief at 17-20. Specifically, Appellant alleges that trial counsel was ineffective for failing to request that the trial court provide the jury with a **Kloiber** instruction, which, Appellant contends, is required "for situations in which the [eyewitness] lacked a good opportunity to view the perpetrator as a matter of law or where the jury could so determine[.]" **Id.** at 18-20. Appellant avers that the eyewitness testified at trial that "while she was riding as a passenger in a vehicle, she approached an intersection, looked to the left[,] and saw [Appellant] approach and fire two [gun] shots into [the victim from] approximately 50 feet away" and "for approximately 10 seconds" before Appellant fled. **Id.** at 18. Appellant argues that "[s]uch period [of time] and distance at least arguably compels a conclusion that [the eyewitness] lacked a good opportunity to clearly view the perpetrator of the attack, or, in the alternative, at least arguably would have permitted the jury to determine that she lacked an opportunity to clearly view the perpetrator of the attack." **Id.** at 18-19. Appellant further asserts that trial counsel had no reasonable strategy for failing to request a **Kloiber** instruction and, as a result of counsel's omission, Appellant was prejudiced when the jury found him guilty of the aforementioned crimes. **Id.** at 19.

In addressing Appellant's issue, we are mindful of our well-settled standard and scope of review of an order denying a PCRA petition. Proper

appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

"It is well-established that counsel is presumed effective[.]" *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012), *citing* *Strickland v. Washington*, 466 U.S. 668, 687-691 (1984). To plead and prove a claim of ineffective assistance of counsel, "a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective[ly] reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). "In determining whether counsel's action was reasonable, we do not

question whether there were other more logical courses of action which counsel could have pursued[. R]ather, we must examine whether counsel's decision[] had any reasonable basis." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). A petitioner establishes prejudice when he or she demonstrates "that there is a reasonable probability that, but for counsel's [acts or omissions], the result of the proceeding would have been different." ***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009).

In dismissing Appellant's claim that trial counsel was ineffective for failing to request a ***Kloiber*** instruction, the PCRA court stated,

> Trial counsel was not legally deficient for failing to request a ***Kloiber*** instruction. [The eyewitness] clearly identified [Appellant]. Her opportunity to view [Appellant] was unobstructed and there was no evidence that she had prior difficulty identifying [Appellant]. She never equivocated on her identification of [Appellant]. There are no facts of record demonstrating that [the eyewitness's] opportunity to identify [Appellant] was impaired.

PCRA Court Opinion, 11/29/22, at 8.

"A ***Kloiber*** charge is appropriate where there are special identification concerns: a witness did not have the opportunity to clearly view the defendant, equivocated in his identification of a defendant, or had difficulty making an identification in the past." ***Commonwealth v. Reid***, 99 A.3d 427, 448 (Pa. 2014). "Our case law makes clear that the need for a ***Kloiber*** charge focuses on the ability of a witness to identify the defendant." ***Id.*** at 115. "A ***Kloiber*** charge is not mandatory where an eyewitness has had protracted and unobstructed views of the defendant and consistently identified the defendant

- 13 -

throughout the investigation and at trial." ***Commonwealth v. Brown***, 196 A.3d 130, 163 (Pa. 2018) (citation, brackets, and original quotation marks omitted).

At trial, the eyewitness testified as to the events surrounding the incident as follows:

> I was with my mother. She was driving a [M]ustang. We were leaving the [drug store] on Second Avenue. . . . So we were coming down Second Avenue and made a right onto Tecumseh Street. We were coming over the [railroad] tracks on Tecumseh. There's a stop over here on the right side for oncoming traffic and sometimes the [traffic does not] stop.
>
> So I looked as we were coming over the [railroad] tracks. I looked and I looked to the left, and as I looked to the left at that exact moment, I saw this man approach. Mr. - what's his name? [Appellant.] I saw him approach [the victim], and he shot [the victim] twice as we were watching the whole thing. [Appellant] held the gun up and looked at us. Saw that somebody had [seen] him and raced the other direction.

N.T., 8/29/16, at 46-47. The eyewitness stated that her mother was driving slowly when she witnessed the shooting because the vehicle was navigating across railroad tracks. ***Id.*** at 49. The eyewitness was approximately 50 feet from where the shooting took place and close enough to distinguish the color of the gun. ***Id.*** at 49, 68. The eyewitness described clear daylight conditions. ***Id.*** at 51. The eyewitness testified that the victim was riding his bicycle away from where she was located in the vehicle and Appellant was jogging towards the victim from the victim's rear. ***Id.*** at 52. After Appellant shot the victim, he looked in the direction of the eyewitness for about 10 seconds before fleeing the scene and, according to the eyewitness, that was when she was

able to see his face. *Id.* at 52-53. The eyewitness described the shooter as "an African-American male" who was "[v]ery tall and very skinny, and he was wearing tennis shoes," a t-shirt, long basketball shorts, and a hat. *Id.* at 62-63. When asked how positive she was that the Appellant was the shooter, the eyewitness responded, "Very positive. I am very certain. I am very positive. Even if he would have changed his clothes, I would recognize his face. I looked clear[ly] at him." *Id.* at 80.

In its charge to the jury, the trial court provided the following instructions pertinent to the eyewitness's identification of Appellant as the shooter:

> You also heard the testimony of [the eyewitness], who identified [Appellant] as the person who committed the [offenses] in this case. In evaluating her testimony, in addition to all the other instructions I have given you, you should consider the following factors:
>
> Did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for her to make her observations? Was she close enough to this individual to know his facial and other physical characteristics, as well as any clothing he was wearing?
>
> Has she made prior identification of [Appellant] as the perpetrator of these crimes at any other proceeding? Was her identification positive or was it disqualified by any evidence or any inconsistencies? During the course of the case, did the witness identify anyone else as the preparator?
>
> In considering whether or not to accept the testimony of that particular witness, you should consider all of the circumstances under which the identifications were made.
>
> Furthermore, you should consider all evidence relative to the question who com[m]itted the crime and including the testimony

- 15 -

of any witness from which an identify or non-identify of the perpetrator of the crimes may be inferred.

N.T., 8/31/16, at 372-373.

Upon review, we discern no abuse of discretion or error of law in the trial court's denial of Appellant's petition. A ***Kloiber*** instruction is only necessary "when either the witness did not have an opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." ***Commonwealth v. Sanders***, 42 A.3d 325, 332 (Pa. Super. 2012), *appeal denied*, 78 A.3d 1091 (Pa. 2013). We concur with the PCRA court, and the record supports, that the eyewitness had an unobstructed view of Appellant on a clear, well-lighted day when Appellant looked directly at her after shooting the victim, the eyewitness did not equivocate in her identification of Appellant, remarking that she as "very positive," and no evidence was presented that the eyewitness had difficulties identifying Appellant on prior occasions. The eyewitness consistently identified Appellant as the shooter both a short time after the incident and at trial. Furthermore, trial counsel tested the veracity of the eyewitness's ability to identify Appellant as the shooter during cross-examination. ***See*** N.T., 8/29/16, at 68-79. Under these circumstances, a ***Kloiber*** instruction would not have been warranted and Appellant's ineffectiveness claim is without arguable merit. Moreover, in light of the jury instructions, as stated *supra*, we concur with the PCRA court that

Appellant failed to show how he was prejudiced by the lack of a *Kloiber* instruction.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2023